## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| JACK WHITTINGTON, Individually and on Behalf of All Others Similarly Situated,<br><br>v.<br><br>STELLAR DRILLING FLUIDS, LLC | CASE NO: _____<br><br>COLLECTIVE ACTION (29 U.S.C. § 216(b))<br><br>CLASS ACTION (Fed. R. Civ. P. 23) |

## ORIGINAL COMPLAINT

### I.   Summary

1. Jack Whittington ("Whittington") brings this lawsuit to recover unpaid overtime wages and other damages from Stellar Drilling Fluids, LLC ("Stellar") under the Fair Labor Standards Act (FLSA) and the New Mexico Minimum Wage Act, NMSA § 50-4-19, *et seq.*, ("NMMWA").

2. Whittington worked for Stellar as a Mud Engineer.[1]

3. Whittington and the other workers like him regularly worked for Stellar in excess of forty (40) hours each week.

4. But these workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

5. Instead of paying overtime as required by the FLSA, Stellar improperly classified Whittington and those similarly situated workers as independent contractors and paid them a daily rate with no overtime compensation.

6. Stellar also never paid Whittington and those similarly situated workers a salary.

---

[1] Mud Engineers are also sometimes referred to as Drilling Fluid Engineers. As used in this Complaint, the term "Mud Engineer" is intended to refer to both titles.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## II. JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b). The Court also has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Stellar's headquarters is located in this District and Division.

## III. THE PARTIES

10. Whittington worked for Stellar as a Mud Engineer from approximately July 2018 until April 2019.

11. Whittington is a resident of Dexter, New Mexico.

12. During the July 2018 to April 2019 time frame, Whittington worked in both New Mexico and Texas.

13. Throughout his employment with Stellar, Whittington was paid a day-rate with no overtime compensation and was classified as an independent contractor.

14. Whittington was also not paid a salary during his time working for Stellar.

15. The relationship between Whittington and Stellar rises to the level of an employee-employer relationship.

16. For example, Stellar dictated Whittington's rate of pay.

17. Whittington reported to Stellar who coordinated his work.

18. Information related to Whittington's pay rate is reflected in Stellar' pay documents.

19. Stellar set Whittington's schedule.

20. Stellar decided Whittington's work locations.

21. Stellar required Whittington to follow their policies and procedures.

22. Stellar prohibited Whittington from working for other employers while working for Stellar.

23. Stellar precluded Whittington from subcontracting out his work.

24. Whittington did not provide unique services indicative of a third-party contractor.

25. Whittington's consent to be a party plaintiff is attached as <u>Exhibit A</u>.

26. Whittington brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Stellar' day-rate system. Stellar paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

27. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All workers employed by, or working on behalf of, Stellar Drilling Fluids, LLC during the past 3 years who were classified as independent contractors and paid a day-rate.** (the "Day Rate Workers").

This class will be referred to as the FLSA Class.

28. In addition to the FLSA Class, Curry seeks to represent the following Class under the New Mexico Minimum Wage Act ("NMMWA"):

> **All workers employed by, or working on behalf of, Stellar Drilling Fluids, LLC during the past 3 years who were classified as independent contractors and paid a day-rate while working in New Mexico.**

This class will be referred to as the NMMWA Class.

29. Defendant Stellar Drilling Fluids, LLC, is a Texas corporation doing business

3

throughout the United States, including Texas and New Mexico. Stellar may be served by serving its registered agent for service of process, J. Kelly Joy, 2121 Kirby Drive, Unit 137, Houston, Texas 77019.

### IV. COVERAGE UNDER THE FLSA

30. At all times hereinafter mentioned, Stellar have been employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

31. At all times hereinafter mentioned, Stellar have been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

32. At all times hereinafter mentioned, Stellar have been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce by any person and in that Stellar have had and have an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

33. At all times hereinafter mentioned, Whittington and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

34. As will be shown through this litigation, Stellar treated Whittington and the Day Rate Workers as employees and uniformly dictated the pay practices of Whittington and the Day Rate Workers.

35. Stellar misclassification of Whittington and the Day Rate Workers as independent contractors does not alter their status as employees for purposes of the FLSA.

**V. FACTS**

36. Stellar Drilling Fluids, LLC is a drilling fluids company servicing the oil and natural gas exploration and production industry and operating throughout the United States, including Texas, New Mexico, Louisiana, and Oklahoma.[2]

37. To complete their business objectives, Stellar hire personnel to perform work as drilling fluid consultants or mud engineers.

38. Many of these individuals worked for Stellar on a day-rate basis, were misclassified as independent contractors, and make up the proposed class of Day Rate Workers. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

39. Stellar classified all its drilling fluid consultants as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

40. For example, Whittington worked for Stellar as a drilling fluids consultant from approximately July 2018 until April 2019. Throughout his employment with Stellar, he was classified as an independent contractor and paid on a day-rate basis.

41. Whittington and the Day Rate Workers worked for Stellar under this pay scheme.

42. Whittington and the Day Rate Workers did not receive a salary.

43. If Whittington and the Day Rate Workers did not work, they did not get paid.

44. Whittington and the Day Rate Workers received a day rate.

45. Whittington received a day rate of $625.00 for each approved 24-hour service day he

---

[2] http://www.stellardrillingfluids.com/index.php/operations (last visited June 12, 2019).

worked for Stellar.

46. On days when he was not scheduled for a 24-hour service day, Whittington was paid a set rate of $200 for each rig he worked at on a given day. This was usually one or two rigs per day.

47. Whittington and the Day Rate Workers received the day rate regardless of the number of hours they worked in excess of 40 hours in a work week.

48. Whittington and the Day Rate Workers did not receive overtime pay.

49. Whittington and the Day Rate Workers are subjected to the same or similar pay practices.

50. Whittington and the Day Rate Workers worked overtime for Stellar.

51. Whittington and the Day Rate Workers often worked at least 12 hours a day, often 7 days a week.

52. Without the job performed by Whittington and the Day Rate Workers, Stellar would not be able to complete its business objectives.

53. Whittington and the Day Rate Workers relied on Stellar for work and compensation.

54. Whittington and the Day Rate Workers worked in accordance with the schedule set by Stellar.

55. Whittington and the Day Rate Workers were not permitted by Stellar to subcontract out the work they are assigned to do by Stellar.

56. Whittington and the Day Rate Workers must follow Stellar' policies and procedures.

57. Whittington and the Day Rate Workers' work must adhere to the quality standards put in place by Stellar.

58. Whittington and the Day Rate Workers did not substantially invest in the tools required to complete the overall job to which they were assigned.

59. Whittington and the Day Rate Workers did not possess any specialized or unique skill

6

set.

60. Whittington and the Day Rate Workers did not market their services, while employed by Stellar.

61. Whittington and the Day Rate Workers worked exclusively for Stellar during the relevant time period.

62. Whittington and the Day Rate Workers did not incur operating expenses like rent, payroll, marketing, and insurance.

63. Stellar set Whittington and the Day Rate Workers' work schedule which prohibited them from working other jobs for other companies while working on jobs for Stellar.

64. At all relevant time, Stellar maintained control, oversight, and direction of Whittington and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

65. Stellar know Whittington, and the other workers like him, worked more than 40 hours in a week.

66. Indeed, Stellar required Whittington and the Day Rate Workers to work substantial overtime without overtime compensation.

67. Stellar classified Whittington and the Day Rate Workers as exempt from the overtime requirements, as independent contractors.

68. Stellar knows these workers are not exempt from the FLSA's overtime provisions.

69. Nonetheless, Stellar failed to pay Whittington and the other Day Rate Workers overtime for those hours exceeding 40 in a workweek.

70. Stellar is aware of the overtime requirements of the FLSA.

71. Stellar knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

## VI. FLSA Violations

72. As set forth herein, Stellar have violated, and are violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

73. Stellar knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Workers overtime compensation. Stellar failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

74. Accordingly, Whittington and the Day Rate Workers are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## VII. NMMWA Violations

75. Whittington bring this claim under the NMMWA as a Rule 23 class action.

76. The conduct alleged violates the NMMWA (NMSA § 50-4-22).

77. At all relevant times, Stellar was subject to the requirements of the NMMWA.

78. At all relevant times, Stellar employed Whittington and each Class Member with New Mexico state law claims as an "employee" within the meaning of the NMMWA.

79. The NMMWA requires employers like Stellar to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 hours in any one week. Whittington and each member of the New Mexico Class are entitled to overtime pay under the NMMWA.

80. Stellar had a policy and practice of misclassifying Whittington and each member of the New Mexico class as contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

81. Whittington and each member of the New Mexico Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

82. Whittington and each member of the New Mexico Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Stellar, as provided by the NMMWA.

### VIII. CLASS & COLLECTIVE ACTION ALLEGATIONS

83. Whittington incorporates all previous paragraphs and alleges that the illegal pay practices Stellar imposed on him were likewise imposed on the members of the class.

84. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the NMMWA.

85. Numerous other individuals who worked with Whittington indicated they were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

86. Based on their experiences and tenure with Stellar, Whittington is aware that Stellar's illegal practices were imposed on the members of the class.

87. Stellar used day rate contractors across the Texas and New Mexico.

88. The members of the class were all improperly classified as contractors and not afforded overtime compensation when they worked in excess of forty 40 hours per week.

89. Stellar is the true employer of the Whittington and Class Members.

90. Stellar's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of the class.

91. Whittington's experiences are therefore typical of the experiences of the members of the class.

92. The specific job titles or precise job locations of the various members of the class do not prevent class or collective treatment.

93. Whittington has no interests contrary to, or in conflict with, the members of the class. Like each member of the class, Whittington have an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

94. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

95. Absent this action, many members of the class likely will not obtain redress of their injuries and Stellar will reap the unjust benefits of violating the FLSA and the NMMWA.

96. Furthermore, even if some of the members of the class could afford individual litigation against Stellar, it would be unduly burdensome to the judicial system.

97. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

98. The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   (a) Whether Stellar employed the members of the class within the meaning of the FLSA and the NMMWA;

   (b) Whether the members of the class were improperly misclassified as contractors;

  (c) Whether Stellar's decision to classify the members of the class as contractors was made in good faith;

  (d) Whether Stellar's decision to not pay time and a half for overtime to the members of the class was made in good faith;

  (e) Whether Stellar's violations of the FLSA and the NMMWA were willful; and

  (f) Whether Stellar's illegal pay practices were applied uniformly across the nation to all members of the class.

99. Whittington's claims are typical of the claims of the members of the class. Whittington and the members of the class sustained damages arising out of Stellar's illegal and uniform employment policy.

100. Whittington knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a collective action.

101. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## IX. JURY DEMAND

102. Whittington demands a trial by jury.

## X. RELIEF SOUGHT

WHEREFORE, Whittington prays for judgment against Stellar as follows:

  a. An Order certifying a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated workers with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

  b. For an Order pursuant to Section 16(b) of the FLSA finding Stellar liable for unpaid back wages due to Whittington and the Day Rate Workers for liquidated damages equal in amount to their unpaid compensation;

  c. For an order designating the state law classes as class actions pursuant to FED. R. CIV. P. 23;

d. For an order awarding Plaintiffs and the class members the costs of this action;

e. For an order awarding Plaintiffs and the class members their attorneys' fees;

f. For an order awarding Plaintiffs and the class members unpaid benefits and compensation in connection with the FLSA and state law violations;

g. For an order awarding Plaintiffs and the class members pre- and post-judgment interest at the highest rates allowed by law; and

h. For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
Michael A. Josephson
Texas Bar No. 24014780
William R. Liles
Texas Bar No. 24083395
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
wliles@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
Federal ID No. 21615
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**